# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DIMOR AEROSPACE, INC., <br><br> Plaintiff, <br><br> -against- <br><br> SVEN LEPSCHY, <br><br> Defendant. | Civil Action No.: <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Dimor Aerospace, Inc. ("Plaintiff"), by and through its attorneys, Tarter Krinsky & Drogin LLP and Brito, PLLC, as and for its Complaint against Defendant Sven Lepschy ("Defendant"), alleges and states as follows:

## NATURE OF THE ACTION

1. This action is necessitated by Defendant's: (i) unlawful misappropriation of Plaintiff's funds for his own personal benefit; (ii) breach of the fiduciary duties he owed to Plaintiff as Plaintiff's director, Chief Executive Officer and President; (iii) other tortious, disloyal and unlawful conduct, self-dealing and conversion of Plaintiff's property and assets to Plaintiff's detriment, all to enrich Defendant at Plaintiff's expense; (iv) waste and mismanagement of Plaintiff and its business; and (v) destruction of corporate records, upon information and belief, to conceal his tortious conduct from Plaintiff's accountants and others.

2. As set forth in greater detail below, Defendant was appointed director of Plaintiff and hired as Plaintiff's CEO and President and was tasked with overseeing Plaintiff and its subsidiary companies' operations in the U.S. After Plaintiff's sole shareholder engaged an outside accounting firm to review Plaintiff's books and records, however, it was discovered that Defendant engaged in numerous instances of waste, mismanagement and self-dealing.

3. Specifically, the accounting firm's review determined that there are at least $3,911,374.99 in unexplained and undocumented business expenses recorded on Plaintiff's books and records without any backup documentation or detail that the accounting firm to rely on to verify that these are legitimate business expenses.

4. To make matters worse, as if they could be, the accounting firm identified approximately $414,956.80 of Plaintiff's funds that were defalcated by Defendant for his personal benefit through a significant number of transfers to unaffiliated companies that are solely owed, operated and/or controlled by Defendant.

5. When confronted with these facts, Defendant showed no remorse for his actions and instead offered hollow promises to cooperate with the investigation and provide meaningful explanations for his conduct, which never came to fruition.

6. Suffice it to say, Defendant's illegal, wrongful and malicious conduct has caused significant damage to Plaintiff, necessitating this action.

**PARTIES**

7. At all times relevant herein, Plaintiff was and is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Michigan.

8. Upon information and belief, at all times relevant herein, Defendant was and is a natural person and is a citizen of the State of Florida, with his residence located in Palm Beach County, Florida.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based on complete diversity of citizenship between Plaintiff and Defendant and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things: (i) Defendant resides in this judicial district; and (ii) a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS COMMON TO ALL CLAIMS

11. Plaintiff's sole shareholder, Dieter Morszeck, has been passionate about flying and vintage aircraft since he was a child. In May 2017, he formed Plaintiff to explore the aviation market in the United States.

12. Because he resided overseas, Mr. Morszeck entrusted Defendant, who Mr. Morszeck previously employed in another business venture and shared his passion for flying, as Plaintiff's director, CEO and President to manage Plaintiff's operations in the U.S.

13. As Plaintiff's director, CEO and President, Defendant exercised complete domination and control over Plaintiff's business, its operations, its assets and property.

14. As Plaintiff's director, CEO and President, Defendant was solely responsible for, among other things, making determinations with respect to Plaintiff's business and operations, including on behalf of Plaintiff's subsidiary and affiliated companies, maintaining Plaintiff's books and records and overseeing the preparation of Plaintiff's tax returns.

15. On or about August 6, 2018, Mr. Morszeck formed another U.S. corporation, Dimor Group Inc. In addition, Dimor Real Estate, LLC and Junkers Aircraft Corp. were formed

as Dimor Group's subsidiaries. These entities were initially headquartered in Florida, where Defendant resided and currently resides.

16. On or about November 9, 2018, Dimor Group acquired ownership of Waco Holdings Inc. and its two subsidiaries, Waco Classic Aircraft Corporation and Centennial Aircraft Services Inc., all located in Battle Creek, Michigan. Waco Holdings Inc. was merged into Dimor Group on or about December 10, 2020.

17. At all times relevant herein, Defendant was director and CEO of Plaintiff and Dimor Group and its subsidiaries and therefore extended his grip of control and domination over the entirety of the Dimor umbrella group of businesses.

18. In July 2022, Mr. Morszeck engaged an outside accounting firm to review the books and records of Defendant and Dimor Group and its subsidiaries. The accounting firm's review revealed a shocking number of financial and other improprieties committed by Defendant, including, without limitation, misappropriation of assets and startingly inadequate record-keeping practices.

19. For example, the accounting firm determined that Plaintiff's bookkeeping and record maintenance practices, which were Plaintiff's responsibility as director, CEO and President, were in complete and total disarray.

20. According to the accounting firm, there are at least $3,911,374.99 in unexplained and undocumented business expenses recorded on Plaintiff's books and records without any backup documentation or detail that the accounting firm to rely on to verify that these are legitimate business expenses.

21. At numerous meetings and in numerous written and verbal communications, Mr. Morszeck and the accountants requested that Defendant provide documentary support for these expenses, but to no avail.

22. Despite repeated promises to provide the documentary support, Defendant has, previously and to date, failed and/or refused to do so.

23. Defendant's mismanagement and waste of Plaintiff's assets did not end there. The accountants also determined that there were approximately $414,956.80 in unexplained payments made by Plaintiff, at Defendant's sole and exclusive direction, to unaffiliated companies that are solely owed, operated and/or controlled by Defendant.

24. These unaffiliated companies have no connection to Plaintiff or its business whatsoever and, when confronted about the propriety of these payments, Defendant had no meaningful explanation for them.

25. Because it had become abundantly clear that Defendant misappropriated Plaintiff's assets for his personal gain and otherwise had engaged in gross mismanagement of Plaintiff's business, Defendant was replaced as CEO of all Dimor entities beginning on March 1, 2023, except for Plaintiff, and finally from Plaintiff effective December 31, 2023.

26. Following his termination, Plaintiff and Mr. Morszeck continued to investigate the facts and circumstances relating to Defendant's management of Plaintiff and use of Plaintiff's funds, and towards that end requested information from Defendant.

27. Defendant rejected these inquiries and refused to cooperate in Plaintiff's investigation; to the contrary, Defendant actively obstructed the investigation by erasing massive amounts of company data from his company-issued laptop and iPad.

28. Upon information and belief, Defendant erased this information in order to conceal his illicit schemes from Plaintiff, Mr. Morszeck, Plaintiff's accountants and outside counsel.

29. As of the date hereof, there are approximately $4,326,330.99 in undocumented expenses authorized by Defendant and/or funds misappropriated by Defendant in furtherance of his personal business interests.

30. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

31. As a result of the Defendant's wrongful conduct, described herein, and Plaintiff's need to protect and enforce its legal rights, Plaintiff has retained the undersigned attorneys, and is required to pay attorneys' fees in order to prosecute this action.

## COUNT I
### (Breach of Fiduciary Duty)

32. Plaintiff repeats, realleges and reasserts paragraphs 1 through 31 as though fully set forth herein.

33. As Plaintiff's director, CEO and President, Defendant was in a position of trust and confidence to act with due care, loyalty, fidelity, good faith and with complete candor with respect to Defendant's employment; as a result, Defendant owed fiduciary duties to Plaintiff and was at all times required to act honestly and in good faith and in the best interests of Plaintiff.

34. As set forth in greater detail above, Defendant breached his duties of care, loyalty, fidelity, good faith and candor to Plaintiff by, among other things: (i) misappropriating significant funds belonging to Plaintiff for his own personal gain; (ii) mismanaging and wasting Plaintiff's assets, including, without limitation, failing to properly account for, document and verify millions of dollars in expenses; and (iii) destroying information on his company-issued electronic devices.

35. Defendant's actions were extreme and outrageous and were undertaken deliberately and with the willful intent of enriching himself at Plaintiff's expense.

36. As a direct and proximate result of Defendant's numerous breaches of the fiduciary duties owed to Plaintiff, Plaintiff has suffered significant damage.

37. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $4,326,330.99, plus exemplary damages in an amount to be determined at trial, plus interest, and costs of suit.

## COUNT II
### (Disgorgement of Compensation/Faithless Servant)

38. Plaintiff repeats, realleges and reasserts paragraphs 1 through 31 as though fully set forth herein.

39. From approximately May 2017 through December 2023 when Defendant's employment with Plaintiff ended, Defendant was paid approximately $681,672.13 in compensation attributable to his services as Plaintiff's CEO and President.

40. As set forth in greater detail above, Defendant breached the duties he owed to Plaintiff as CEO and President by, among other things: (i) misappropriating significant funds belonging to Plaintiff for his own personal gain; (ii) mismanaging and wasting Plaintiff's assets, including, without limitation, failing to properly account for, document and verify millions of dollars in expenses; and (iii) destroying information on his company-issued electronic devices.

41. From approximately May 2017 through December 2023 when Defendant's employment with Plaintiff ended, Defendant failed to act as Plaintiff's loyal servant and corporate officer under Florida law and therefore Plaintiff is entitled to disgorge all compensation that Plaintiff paid to Defendant during the period of his disloyalty.

42. By reason of the foregoing, Plaintiff seeks disgorgement from Defendant in an amount to be determined at trial, but in no event less than $681,672.13, plus interest, and costs of suit.

### COUNT III
**(Conversion)**

43. Plaintiff repeats, realleges and reasserts paragraphs 1 through 31 as though fully set forth herein.

44. As set forth in greater detail above, Defendant exercised complete dominion and control over Plaintiff's business, its operations, its assets and property.

45. As set forth in greater detail above, Defendant's dominion and control over Plaintiff's business, its operations, its assets and property were wrongful, unauthorized and/or without justification insofar as Defendant diverted Plaintiff's funds to unrelated and unaffiliated companies over which Defendant solely owned, operated and/or controlled for his personal gain and benefit.

46. Defendant's wrongful acts of dominion are inconsistent with the rights of Plaintiff as owner of the property entrusted to him, thereby depriving Plaintiff of its rightful property.

47. Defendant's wrongful acts constitute unlawful conversion of Plaintiff's property funds and assets.

48. Given Defendant's conduct once the investigation was conducted including, without limitation, rejecting Plaintiff's inquiries for information, refusing to cooperate in Plaintiff's investigation, failing to properly account for, document and verify millions of dollars in expenses, and destroying information on his company-issued electronic devices, a demand for the return of what Defendant has converted would be futile.

49. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $414,956.80, plus exemplary damages in an amount to be determined at trial, interest, plus and costs of suit.

## COUNT IV
### (Unjust Enrichment)

50. Plaintiff repeats, realleges and reasserts paragraphs 1 through 31 as though fully set forth herein.

51. By engaging in the misconduct set forth herein, Defendant has intentionally and knowingly benefited from, and been unjustly enriched to Plaintiff's detriment by, diverting and misappropriating Plaintiff's funds, monies and assets for Defendant's use and benefit.

52. Defendant has accepted and retained the benefits conferred on him by Plaintiff.

53. The circumstances are such that it would be inequitable for Defendant to retain the benefit conferred on him.

54. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $414,956.80, plus exemplary damages in an amount to be determined at trial, plus interest, and costs of suit.

## COUNT V
### (Corporate Waste, Mismanagement and Self-Dealing)

55. Plaintiff repeats, realleges and reasserts paragraphs 1 through 31 as though fully set forth herein.

56. By engaging in the misconduct set forth herein, Defendant has engaged in acts of corporate waste, mismanagement and self-dealing for his own personal benefit at Plaintiff's expense.

57. Based on the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $4,326,330.99, plus exemplary damages in an amount to be determined at trial, plus interest, and costs of suit.

## COUNT VI
### (Accounting)

58. Plaintiff repeats, realleges and reasserts paragraphs 1 through 31 as though fully set forth herein.

59. As set forth above, Defendant owed fiduciary duties to Plaintiff in connection with Defendant's role as director and with Defendant's employment as CEO and President; and accordingly, Plaintiff is entitled to obtain a just and fair accounting of all expenditures, transfers, payments and/or conveyances of Plaintiff's funds, monies, assets and property allegedly authorized by Defendant.

60. Plaintiff has demanded that Defendant account for the funds, monies, assets and property allegedly authorized by Defendant to third-parties, but Defendant has failed and/or refused to do so.

61. Plaintiff has no adequate remedy at law.

62. By reason of the foregoing, Plaintiff is entitled to an accounting of all expenditures, transfers, payments and/or conveyances of Plaintiff's funds, monies, assets and property allegedly authorized by Defendant and the imposition of a constructive trust over such funds, monies, assets and property of Plaintiff.

**WHEREFORE**, Plaintiff Dimor Aerospace, Inc. demands judgment in its favor and against Defendant Sven Lepschy as follows:

A. On Count I, an amount to be determined at trial, but in no event less than $4,326,330.99, plus exemplary damages in an amount to be determined at trial;

B. On Count II, an amount to be determined at trial, but in no event less than $681,672.13, plus interest, and costs ;

C. On Count III, an amount to be determined at trial, but in no event less than $414,956.80, plus exemplary damages in an amount to be determined at trial;

D. On Count IV, an amount to be determined at trial, but in no event less than $414,956.80, plus exemplary damages in an amount to be determined at trial;

E. On Count V, an amount to be determined at trial, but in no event less than $4,326,330.99, plus exemplary damages in an amount to be determined at trial;

F. On Count VI, compelling Defendant to provide Plaintiff with an accounting of all expenditures, transfers, payments and/or conveyances of Plaintiff's funds, monies, assets and property and the imposition of a constructive trust over such funds, monies, assets and property of Plaintiff; and

G. On all Counts, interest, disbursements, costs of suit and such other and further relief as this Court deems just, equitable and proper.

Dated: July 22, 2024                                                        Respectfully Submitted,

**BRITO, PLLC**
*/s/ Alejandro Brito*
Alejandro Brito
Florida Bar No. 098442
abrito@britopllc.com
apiriou@britopllc.com
2121 Ponce de Leon Boulevard
Suite 650
Miami, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

**TARTER, KRINSKY & DROGIN, LLP**
*/s/ Jonathan E. Temchin*
Jonathan E. Temchin
*Pro Hac Vice Admission to be Filed*
jtemchin@tarterkrinsky.com
1350 Broadway
New York, NY 10018
Office: (212) 216-1139
Fax: (212) 216-8001

*Counsel for Plaintiff*